UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KAYLA AZPEITIA,
on behalf of herself and all others similarly situated,

Plaintiff,

v.

EMPLOYMENT ADVOCATES GROUP LLC,

Defendant.

CASE NO. _____

COLLECTIVE ACTION
JURY DEMAND

**COMPLAINT**

Plaintiff Kayla Azpeitia, individually and on behalf of all others similarly situated, respectfully moves for judgment against Defendant Employment Advocates Group LLC ("EAG" or "Defendant") as follows.

**I.    SUMMARY OF ACTION**

1. This Complaint seek relief for claims for unpaid minimum wages and regular hourly wages in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"), the Virginia Wage Payment Act, VA Code § 40.1-29 ("VWPA"), and other laws, arising out work that Plaintiff, and others similarly situated, performed as employees of Defendant.

2. Plaintiff contends that Defendant has violated and continues to violate the FLSA and VWPA and other laws by having a policy and practice of not paying minimum wages to Plaintiff and similarly situated employees for workweeks when it collects from employees, via payroll deduction, bill, or other means, for purported training costs.

1

3. Defendant's collection of training costs from employees, typically done on the employee's final paycheck when the employee resigns or is terminated within six months of hire, results in Plaintiff and similarly situated employees receiving sub-minimum wage pay for the applicable workweeks. They do not receive the required minimum hourly wages "free and clear" as required by the FLSA. *See* 29 C.F.R. § 531.35.

4. The FLSA Collective is made up of all persons who have been employed by Defendant and had their pay reduced below minimum wage for any workweek due to Defendant's practice of collecting training costs at any time within three years, or longer if equitable tolling is granted, prior to this action's filing to the trial of this action (the "FLSA Collective Period").

5. Plaintiff, on behalf of herself and members of the FLSA Collective, seeks unpaid minimum wages, liquidated damages, pre and post judgment interest, attorneys' fees and costs, and all relief allowed by law arising out of the Defendant's FLSA violations.

6. The Virginia Collective is made up of all members of the FLSA collective who worked for Defendant in Virginia and who had their pay reduced by more than the prorated amount purportedly authorized by the same or substantially the same offer letter that Defendant used with Plaintiff (Ex. 2).

7. Plaintiff reserves the right to seek to amendment to assert additional claims under Rule 23 of the Federal Rule of Civil Procedure, and/or propose an amended collective definition. to the extent discovery warrants such amendments.

II. **JURISDICTION AND VENUE**

8. This Court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331, as well as 29 U.S.C. § 216(b) and (c) in that the Plaintiff may bring this action in any appropriate

United States District Court.

9. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the FLSA claims they form part of the same case or controversy. Defendant's policy and practice of not paying Plaintiff and similarly situated employees minimum wages due to its collection of training costs violates the FLSA and state law.

10. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Civil Rule 3(C) since Defendant resides in and/or the acts and omissions giving rise to this lawsuit have taken place in this division in the Eastern District of Virginia.

11. Defendant is subject to personal jurisdiction in the Commonwealth of Virginia. Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

### III. PARTIES

12. Plaintiff Kayla Azpeitia is a resident of Virginia. From approximately June 26, 2023 to August 25, 2023, Plaintiff was employed by Defendant as a vocational counselor. At all times relevant, Plaintiffs was an "employee" as defined in the FLSA and other applicable laws.

13. Defendant Employment Advocates Group LLC is a Virginia limited liability company with its principal office (according to filings with the Virginia State Corporation Commission) located at 7340 Heritage Village Plz., Unit 101, Gainesville, VA 20155-3079. At all times relevant, Defendant met the definition of "employer" as defined in the FLSA and other applicable laws.

14. At all times relevant, Defendant exercised control over the terms and conditions of the employment of Plaintiff and other similarly situated employees.

15. At all times relevant, Defendant and its agents made the FLSA and state law-violating pay decisions in and from its offices in Virginia.

16. Plaintiff is informed, believes, and thereon alleges that Defendant's gross annual sales made or business done is $500,000.00 or greater. Defendant operates in interstate commerce by, among other things, buying and/or selling goods and/or transacting business in multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states. Defendant's employees, including Plaintiff and similarly situated employees, were engaged in commerce and/or the production of goods for commerce.

## IV.     FACTUAL ALLEGATIONS

17. Defendant EAG is a for-profit company in the business of providing supported employment and workplace assistance to its clients.

18. Defendant employs staff, like Plaintiff and similarly situated employees, to provide Defendant's services to its clients.

19. Defendant's staff may have different titles, depending on the specific services they are hired to provide. Plaintiff was employed as a vocational counselor.

20. Regardless of titles, Defendant's staff are non-exempt hourly employees entitled to minimum wages under the FLSA and state law.

21. In the summer of 2023, Plaintiff applied for a job with Defendant as a vocational counselor.

22. Defendant hired Plaintiff as a vocational counselor, with a scheduled start date of June 26, 2023.

23. Defendant required Plaintiff and similarly situated employees to sign an offer

letter prior to their employment. The offer letter provided, inter alia:

> We invest in our employees and pay for all required trainings. Resigning or being terminated prior to six months of employment will require prorated payback of trainings deducted from your last pay up to $1000 per the training worksheet.

24. The offer letter is attached as Exhibit 2. The training worksheet is attached as Exhibit 3.

25. As explained further below, Plaintiff disputes that EAG paid, incurred or invested $1000 in out-of-pocket costs in providing training individually to Plaintiff and similarly situated employees.

26. During Plaintiff's employment, to Plaintiff's knowledge, Defendant employed approximately thirty or more vocational counselors.

27. The first week of Plaintiff's and similarly situated employees' employment consisted of an onboarding training, also called an orientation. The training consisted primarily of an EAG team member providing training to Plaintiff and similarly situated employees on issues relating to their provision of Defendant's services to clients. For example, the training included PowerPoint presentations on HIPAA and instructions on how to use the company's timekeeping application, Homebase. The training also entailed completing employment forms, getting a tuberculosis test, meeting EAG management, and touring the EAG premises. The first three days of the training were approximately 8 hours daily on Zoom with EAG team members. The fourth day was online doing the First Aid/CPR course discussed below. The fifth day was in person at the EAG office.

28. The training included an online First Aid/CPR course, which was administered by the Red Cross.

29. Other than the First Aid/CPR training, the training was conducted by EAG team

members.

30. Upon information and belief, the only aspects of the weeklong training that EAG paid for out of pocket was the Red Cross training, at an estimated cost of approximately $37 (according to the Red Cross website, https://www.redcross.org/take-a-class/classes/adult-first-aid%2Fcpr%2Faed-online/a6R3o000001vqDD.html), and the tuberculosis test.

31. During Plaintiff's employment, the was a new onboarding training approximately every two or three weeks. Each training had about two to three new employees in it.

32. Plaintiff's hourly rate of pay was $18.50. Similarly situated employees were paid similar hourly rates.

33. On or about August 25, 2023, Plaintiff's employment with EAG ended.

34. On or about September 1, 2023, issued to Plaintiff pay for her final two workweeks of employment, covering the date range 8/14/2023 to 8/27/23 ("the final two workweeks").

35. During the final two workweeks, per the pay stub, Plaintiff worked approximately 56.50 hours. At her $18.50 hourly rate of pay, this resulted in gross pay owed to Plaintiff of $1,045.25 for the final two workweeks. After required tax deductions and withholding, Plaintiff's net pay for the final two workweeks came to exactly $879.72.

36. Pursuant to its policy at issue in this case, Defendant deducted from Plaintiff's pay for the final two workweeks exactly $879.72 (the full amount of Plaintiff's after tax wages) for purported "Training per Offer Letter." This resulted in Defendant's payment to Plaintiff of $0 in wages for 56.50 hours worked by Plaintiff during the final two workweeks.

37. On the final pay stub, Defendant reimbursed Plaintiff for $38.36 in mileage. This was the only payment Plaintiff received from Defendant for the final two workweeks.

38. Plaintiff disputes that EAG paid, incurred or invested $879.72 in out-of-pocket costs in providing training individually to Plaintiff.

39. Plaintiff further asserts that the offer letter did not authorize EAG to deduct $879.72 from her pay.

40. Rather, the offer letter only purported to authorize a deduction for a "prorated payback of trainings … up to $1000 per the training worksheet." (Ex. 2). Per the training worksheet, the purported training costs totaled a maximum of $1000, comprising $100 for CPR/First Aide Training, $200 for Therapeutic Options Training, and $700 for "Other Required Trainings", (Ex. 3).

41. As noted above, upon information and belief the only training cost that EAG paid for out of pocket was the CPR training, at an estimated $37. The offer letter only authorized a prorated deduction for training costs. Since Plaintiff worked for two of the six months, the offer letter only authorized deduction for a prorated amount of $24.67 ($37 * 2/3 remaining in six-month period).

42. Even if EAG paid $100 for the CPR training, which Plaintiff disputes, the offer letter would only authorize a prorated deduction of $66.67 ($100 * 2/3).

43. Even if EAG paid the full $1000 for all trainings, which Plaintiff disputes, the offer letter would only authorize a prorated deduction of $666.67 ($1,000 * 2/3).

44. Thus, the terms of the offer letter did not authorize EAG to deduct $879.72 from Plaintiff's pay.

45. Defendant used the same or substantially the same offer letter and training cost worksheet with other employees.

46. Employees similar situated to Plaintiff similarly had their pay for their final two

7

workweeks reduced below the required minimum hourly wages, and below the prorated amount authorized by the offer letter, through a deduction for purported training costs.

A. **Defendant's Policy and Practice of Paying Collecting Training Costs From Employees Resulting in the Payment of Sub-Minimum Hourly Wages.**

47. Defendant has a policy and practice of collecting purported training costs from Plaintiff and similarly situated employees, resulting in the payment of sub-minimum hourly wages for the final two workweeks of employment, in violation of the FLSA and other laws.

48. By failing to pay Plaintiff and similarly situated employees at least $7.25 per hour "finally and unconditionally or 'free and clear'", 29 C.F.R. § 531.35, Defendant has violated, and continues to violate, the minimum wage provisions of the FLSA and state law.

49. Regardless of whether Defendant had a contractual agreement to pay Plaintiff and similarly situated employee less than minimum wage due to collecting purported training costs, which Plaintiff disputes, these employees still had a right to at least minimum wages and other FLSA rights because FLSA rights cannot be waived by private agreement. *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945) ("[T]o allow waiver of statutory wages by agreement would nullify the purposes of the Act.").

50. Defendant knew Plaintiffs and similarly situated employees worked without being paid minimum wages, in violation of the FLSA and state law.

51. Plaintiffs and the similarly situated employees were not employed in any bona fide executive, administrative, or professional capacity. Nor did they qualify for the outside sales exemption.

52. Based on their hourly pay and the nature of the job duties of Plaintiffs and all similarly situated employees, there is no FLSA or state law exemption that applies to preclude

them from being paid minimum wages.

53. Defendant willfully violated the FLSA and state law by knowingly failing to pay its employees minimum wages as described herein.

54. At all relevant times Defendant knowingly failed to pay wages to Plaintiffs and similarly situated employees in accordance with the FLSA and state law.

55. At all relevant times Defendant intended to deprive Plaintiffs and similarly situated employees of the minimum wages to which they were entitled, or acted with reckless disregard for the rights of Plaintiffs and similarly situated employees.

**B.      Defendant's Policy and Practice of Paying Reducing Pay By More Than the Prorated Amount Authorized by the Offer Letter.**

56. Defendant has a policy and practice of reducing Plaintiff's and similarly situated employee's final pay check by more than the prorated amount authorized by the offer letter, in violation of the Virginia Wage Payment Act, VA Code § 40.1-29(A)&(C) ("VWPA").

57. For example, as explained above, Defendant deducted all wages from Plaintiff's final pay check ($872.79) even though the offer letter only purported to authorize a smaller, prorated, deduction.

58. At all relevant times Defendant knowingly failed to pay wages to Plaintiffs and similarly situated employees in accordance with the VWPA.

59. At all relevant times Defendant intended to deprive Plaintiffs and similarly situated employees of the full wages to which they were entitled, or acted with reckless disregard for the rights of Plaintiffs and similarly situated employees.

**V.     COLLECTIVE ACTION ALLEGATIONS**

60. Plaintiffs file this statutorily authorized collective action pursuant to 29 U.S.C. §

216(b) and VA Code § 40.1-29 (J) as Representative Plaintiff on behalf of herself and all other similarly situated employees. The similarly situated employees are as follows:

    a.    **FLSA Collective**: The FLSA Collective is defined as all persons who have been employed by Defendant and had their pay reduced below minimum wage for any workweek due to Defendant's practice of collecting training costs at any time within three years, or longer if equitable tolling is granted, prior to this action's filing to the trial of this action (the "Collective Period").

    b.    **Virginia Collective**: All members of the FLSA collective who worked for Defendant in Virginia who had their pay reduced by more than the prorated amount authorized by the same or substantially the same offer letter that Defendant used with Plaintiff.

61. Plaintiff is aware of other employees who are similarly situated.

62. Plaintiff estimates that there are multiple similarly situated employees who fit the above definitions who were deprived of minimum wages because of Defendant's practice described herein. Approximately thirty potential such employees were employed by Defendant at the same time as Plaintiff.

63. Within the past three years, and longer if equitable tolling is granted, Plaintiff and similarly situated employees were subject to a common plan or policy of Defendant to avoid paying minimum wages by collecting purported training costs via payroll deduction or other means.

64. Upon information and belief, Plaintiffs and similarly situated employees were denied pay under the same "training costs collection" policy of Defendant.

65. Upon information and belief, these employees perform work which entitles them

to payment of minimum wages that they have not received, due to Defendant's policy described herein..

66.     Upon information and belief, Defendant compensated, and continues to compensate, those similarly situated to Plaintiffs on a uniform compensation basis.

67.     Defendant's policy and practice of not paying these employees minimum wages amounted to a willful or reckless disregard of its employees' rights under the FLSA and state law.

68.     Defendant's policy and practice of not paying these employees minimum wages amounted to a knowing failure to pay these employees the full wages to which they were entitled.

69.     Defendant had no good faith basis to believe that these employees were not entitled to minimum wages as required by the FLSA and state law.

70.     Defendants' willful disregard of the minimum wage laws described herein entitles Plaintiffs and similarly situated employees to the application of the three (3) year limitations period, or longer if equitable tolling is granted.

71.     Plaintiff's job duties, and the job duties of those similarly situated to Plaintiff, are not exempt from the coverage of the FLSA.

72.     At all relevant times, Plaintiffs and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

73.     Defendant is liable under the FLSA and state law for failing to properly compensate Plaintiffs and the Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former employees of Defendant who have been denied minimum wages in violation of the FLSA and state law who would benefit from the

issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

### A. Notice of Filing of Consent to Become a Party Plaintiff.

74. Plaintiffs hereby files her Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code § 40.1-29 (J). Plaintiff's Written Consent Form is attached as Exhibit 1.

75. Plaintiff reserves the right to seek amendment to assert additional claims under Federal Rule of Civil Procedure 23, and the right to propose an amended collective definition in her motion for collective action certification.

## VI. Collective Claims

**Count I: Violations of the FLSA**
**(Minimum Wage Violations)**
**(On Behalf of Plaintiff and FLSA Collective)**

76. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

77. At all times relevant herein, Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

78. The FLSA requires covered employers, such as Defendant, to compensate all non-exempt employees at a minimum wage rate of not less than $7.25 per hour. 29 U.S.C. § 206. As such, Plaintiff and all similarly situated employees are entitled to a minimum wage of $7.25 per hour for all work performed, "free and clear" of any employer-imposed training costs or other costs. *See* 29 C.F.R. § 531.35.

79. By failing to compensate Plaintiff and similarly situated employees with at least minimum wages for all time worked, Defendant has violated, and continues to violate the FLSA.

80. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81. Plaintiff seeks damages for herself and all others similarly situated in the amount of unpaid minimum wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

### Count II: Violations of the Virginia Wage Payment Act ("VWPA")
### (On Behalf of Plaintiff and Virginia Collective)

82. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

83. Plaintiff currently is not certain whether there are a sufficient number of potential Plaintiffs who worked for Defendant in Virginia to satisfy the numerosity requirement for a class or subclass under Fed. R. Civ. P. 23(a)(1). A collective action for the VWPA claims is appropriate pursuant to VA Code §§ 40.1-29.2 and 40.1-29(J). Should discovery reveal a sufficient number of similarly-situated Virginia workers to satisfy the Rule 23 numerosity requirement, Plaintiff reserves the right to amend to assert the VWPA claims as Rule 23 class action claims.

84. The VWPA provides for collective actions for violations of the VWPA: "[I]f an employer fails to pay wages to an employee in accordance with this section…the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b)[.]" VA Code § 40.1-29 (J).

85. At all times relevant to this action, Plaintiff and similarly situated employees were employed by Defendant within the meaning of the VWPA, VA Code § 40.1-29.

86. Plaintiffs brings this VWPA count as a statutorily-authorized collective action pursuant to VA Code § 40.1-29(J), on behalf of herself and the VWPA Collective.

87. Plaintiff and similarly situated employees had a right to be paid their agreed hourly rates for all time worked for Defendant. These wages were earned and due on each of the applicable pay periods.

88. The VWPA provides, inter alia, that an employer must pay wages due on regular pay periods and "Upon termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated." Va. Code § 40.1-29(A).

89. The VWPA further provides, inter alia, that "No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee." Va. Code § 40.1-29(C).

90. As explained above, the offer letter did not authorize Defendant to deduct or withhold the full amount of the Collective's final paychecks; it only purported to authorize a deduction for a prorated portion of certain training costs. However, Defendant had a policy and practice of deducting and withholding more than the authorized amount for Plaintiff's and similarly situated employee's final paychecks. In so doing Defendant committed an unlawful deduction and withholding from wages, in violation of the VWPA, Va. Code § 40.1-29(C), and failed to pay all wages due to the employees for worked performed, in violation of Va. Code §

40.1-29(A).

91.     Defendant's conduct as described herein constitutes Defendant "knowingly failed to pay wages to an employee in accordance with [the VWPA]" within the meaning of VA Code § 40.1-29(J) and (K).

92.     Plaintiff for herself and all others similarly situated seeks damages in the amount of unpaid and withheld wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, as well as "an amount equal to triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §§ 40.1-29.2(F) and 40.1-29(J), all other relief available under the VWPA, and all other such legal and equitable relief as the Court deems just and proper.

**VII.     Individual Claims**

**Count III: Violations of the Virginia Minimum Wage Act**
**(Minimum Wage Violations)**
**(On Behalf of Plaintiff Only)**

93.     Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

94.     Plaintiff brings this count under the Virginia Minimum Wage Act, VA Code § 40.1-28.8, *et seq*. ("VMWA").

95.     Plaintiff currently is not certain whether there are a sufficient number of potential Plaintiffs who worked for Defendant in Virginia to satisfy the numerosity requirement for a class or subclass under Fed. R. Civ. P. 23(a)(1). Should discovery reveal a sufficient number of similarly-situated Virginia workers to satisfy the Rule 23 numerosity requirement, Plaintiff reserves the right to amend to assert the VMWA claims as Rule 23 class action claims.

96.     At all times relevant, Defendant has been, and continues to be, an "employer,"

and Plaintiff and each similarly situated employee, has been, or continues to be, an "employee" within the meaning of the VMWA, VA Code § 40.1-28.9.

97. The VMWA requires, "A. 1. Prior to May 1, 2021, every employer shall pay to each of its employees wages at a rate not less than the federal minimum wage." The VMWA further provides, "B. From May 1, 2021, until January 1, 2022, every employer shall pay to each of its employees wages at a rate not less than the greater of (i) $9.50 per hour or (ii) the federal minimum wage. C. From January 1, 2022, until January 1, 2023, every employer shall pay to each of its employees wages at a rate not less than the greater of (i) $11.00 per hour or (ii) the federal minimum wage. D. From January 1, 2023, until January 1, 2025, every employer shall pay to each of its employees wages at a rate not less than the greater of (i) $12.00 per hour or (ii) the federal minimum wage." VA Code § 40.1-28.10.

98. As such, Plaintiff and all similarly situated employees are entitled to minimum wages as required by the VMWA.

99. By failing to pay the required minimum wages to Plaintiff and similarly situated employees, Defendant has violated, and continues to violate the VMWA.

100. By failing to compensate Plaintiffs and similarly situated employees with the required minimum wages, Defendant has violated, and continues to violate the VMWA.

101. The VMWA provides, "Any employer who violates the minimum wage requirements of this law shall be liable to the employee or employees affected in the amount of the unpaid minimum wages, plus interest at eight per centum per annum upon such unpaid wages as may be due the plaintiff, said interest to be awarded from the date or dates said wages were due the employee or employees. The court may, in addition to any judgment awarded to the employee or employees, require defendant to pay reasonable attorney's fees incurred by the

employee or employees." VA Code § 40.1-28.12.

102. Plaintiff seek damages in the amount of the unpaid minimum wages, plus interest at eight per centum per annum upon such unpaid wages, said interest to be awarded from the date or dates said wages were due the employee or employees, as well as reasonable attorney's fees and costs, all other relief available under the VMWA, and all other such legal and equitable relief as the Court deems just and proper.

### Count IV: Breach of Contract
### (On Behalf of Plaintiff Only)

103. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

104. Plaintiff currently is not certain whether there are a sufficient number of potential Plaintiffs who worked for Defendant in Virginia to satisfy the numerosity requirement for a class or subclass under Fed. R. Civ. P. 23(a)(1). Should discovery reveal a sufficient number of similarly-situated Virginia workers to satisfy the Rule 23 numerosity requirement, Plaintiff reserves the right to amend to assert the contract claim as Rule 23 class action claims.

105. The offer letter provided that Plaintiff would receive a starting base wage of $18.50 per hour to work as a vocational counselor. (Ex. 2.) The offer letter further provided, "Resigning or being terminated prior to six months of employment will require prorated payback of trainings deducted from your last pay up to $1000 per the training worksheet." (Id.)

106. Plaintiff performed her end of the offer letter.

107. Defendant breached Plaintiff's offer letter by not paying her the agreed hourly rate of $18.50 per hour for her final pay period, when Defendant deducted from Plaintiff's final paycheck more than the prorated amount authorized by the offer letter.

108. As a result of the breach, Plaintiff incurred damages including lost wages.

109. Plaintiff seek damages in the amount of the unpaid wages and any other contractual damages, plus interest, as well as reasonable attorney's fees and costs, all other relief available under Virginia law, and all other such legal and equitable relief as the Court deems just and proper.

### **FLSA and VWPA Relief Requested**

Wherefore, Plaintiff on behalf of herself and all members of the FLSA Collective and Virginia Collective requests the following Relief against Defendant:

    A.    An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

    B.    Judgment that Plaintiff and all similarly situated employees were non-exempt employees entitled to protection under the FLSA and VWPA;

    C.    Judgment against Defendant for violations of the minimum wage provisions of the FLSA;

    D.    Judgment against Defendant for violations of the provisions of the VWPA;

    E.    Judgment that Defendant's violations as described above were willful;

    F.    Judgment that Defendant's violations as described constitute Defendant "knowingly failed to pay wages to an employee in accordance with [the VWPA]" within the meaning of VA Code § 40.1-29(J) and (K).

    G.    Money damages for all unpaid wages and minimum wages;

    H.    Liquidated damages in an amount equal to all unpaid wages and minimum wages owed to Plaintiffs and similarly situated employees, and/or triple

       damages to the full extent allowed by law;

I.     Triple damages pursuant to VA Code 40.1-29(J) & (K).

J.     Pre-judgment and post-judgment interest;

K.    Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

L.     Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for unpaid wages, class claims under Federal Rule 23, claims for retaliation and/or unpaid overtime or minimum wages under the FLSA or other applicable law; and

M.    Any and all further relief permissible by law.

## **Individual VMWA, Contract, and Other Relief Requested**

Wherefore, Plaintiff individually requests the following Relief against Defendant:

A.     Unpaid minimum wages, other due wages, liquidated and/or triple damages, injunctive relief, interest, and attorney's fees and costs pursuant to Virginia law;

B.     Judgment that Plaintiff and all similarly situated employees were non-exempt employees entitled to protection under the VMWA;

C.     Judgment against Defendant for violations of the minimum wage provisions of the VMWA;

D.     Judgment that Defendant's violations as described above were willful;

E.     Money damages for all unpaid minimum wages;

F.     Liquidated damages in an amount equal to all unpaid wages owed to Plaintiff and similarly situated employees, and/or triple damages to the full extent

allowed by law;

  G. Pre-judgment and post-judgment interest;

  H. Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

  I. Damages in the amount of the unpaid agreed wages and any other contractual damages, plus interest, as well as reasonable attorney's fees and costs, all other relief available under Virginia law, and all other such legal and equitable relief as the Court deems just and proper.

  J. Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the VWPA, VMWA, Virginia Overtime Wage Act, or other applicable law; and

  K. Any and all further relief permissible by law.

## **Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a TRIAL BY JURY for all claims and issues so triable.

Dated: December 19, 2023

Respectfully submitted,

**KAYLA AZPEITIA, on behalf of herself and all others similarly situated,**
By Counsel

| | |
|---|---|
| /s/Matthew Sutter | /s/Timothy Coffield |
| Matthew T. Sutter, Esq., VSB 66741 | Timothy Coffield (VSB No. 83430) |
| Sutter & Terpak, PLLC | Coffield PLC |
| 7540 Little River Turnpike, Suite A | 106-F Melbourne Park Circle |
| Annandale, VA 22003 | Charlottesville, VA 22901 |
| Tel: (703) 256-1800 ; Fax: (703) 991-6116 | P: (434) 218-3133 F: (434) 321-1636 |
| Email: matt@sutterandterpak.com | tc@coffieldlaw.com |
| Counsel for Plaintiff | Counsel for Plaintiff |