# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

KAYLA AZPEITIA,
on behalf of herself and all others similarly situated,

    Plaintiff,

v.

    CASE NO. 1:23-cv-01742-DJN

EMPLOYMENT ADVOCATES GROUP LLC,

    Defendant.

# MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL WITH PREJUDICE

**INTRODUCTION**

Plaintiff Kayla Azpeitia ("Plaintiff") and Defendant Employment Advocates Group LLC (collectively, the "Parties"), jointly file this Joint Motion for Approval of Settlement Agreement and Dismissal With Prejudice ("Motion") asking that the Court (1) approve the Parties' Settlement Agreement, filed as Exhibit 1 to this Motion, and (2) dismiss the Action with Prejudice. In support of this Motion, the Parties respectfully state as follows:

**I.    FACTUAL BACKGROUND.**

Plaintiff initiated this action on December 19, 2023 by filing a Complaint against Defendant alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Virginia Wage Payment Act ("VWPA") (the "Action"). (ECF 1.) In the Complaint, Plaintiff alleged that Defendant violated the FLSA and VWPA by not paying minimum wages to Plaintiff and similarly situated employees for workweeks when it collects from employees, via payroll deduction, bill, or other means, for purported training costs. (ECF 1, ¶¶ 2, 17-59; 76-81; 82-92.) Plaintiff also asserted individual claims for breach of contract unpaid wages under the Virginia Minimum Wage Act, arising from the same pay-deduction practice. (ECF 1, ¶¶ 93-102; 103-109.)

With respect to Plaintiff's individual claim at issue, she alleged that during her final two workweeks, she worked approximately 56.50 hours, at $18.50 per hour, resulting in gross pay owed to Plaintiff of $1,045.25 for those final two workweeks. (Id. ¶ 35.) After required tax deductions and withholding, Plaintiff's net pay for the final two workweeks came to $879.72. (Id.) Pursuant to its policy at issue in this case, Plaintiff alleged that Defendant deducted from Plaintiff's pay for the final two workweeks exactly $879.72 (the full amount of Plaintiff's after tax wages) for purported training costs. (Id. ¶ 36). Thus, the maximum amount of unpaid wages at issue for Plaintiff was $1,045.25. Taking into account the VWPA's triple damages provision, Va. Code §

1

40.1-29(J), if she proved that Defendant "knowingly failed" to comply with the VWPA, her best possible recovery in the case was $3,135.75.[1]

Shortly after suit was filed, Defense counsel contacted Plaintiff's counsel and the parties began settlement discussions. In the course of settlement discussions (but not as part of the settlement), Defendant indicated that as a result of the lawsuit it had voluntarily issued payments to approximately 20 potential collective members for the full amounts that were deducted from their paychecks pursuant to the practice at issue in the case. Although this Action was initially pleaded as a collective action pursuant to the VWPA, Va. Code 40.1-29(J) and FLSA Section 216(b), Plaintiff subsequently chose to settle this matter in her individual capacity.

The total amount of the settlement is $13,000. The amount of the settlement going to Plaintiff is $6,500, which is more that double her "best day in court" recovery in this case. The amount going to attorney fees and costs ($6,500, including $405 in costs) represents a deduction of more than 40% against Plaintiff's counsel's lodestar. Thus, the Parties believe the settlement is a fair and reasonable resolution of this matter, a conclusion further bolstered by Defendant's voluntary remedy of the practice at issue and payments to 20 employees outside of the case in response to the Action.

This Joint Motion and its accompanying attachments memorialize the Parties' intention and complete agreement to end their dispute rather than proceed to trial. The terms of the Parties' settlement are set forth in the Settlement Agreement, which is filed with this Joint Motion as Exhibit 1.

---

[1] Because Plaintiff's VWPA claim is significantly more valuable that the FLSA minimum wage claim (56.50 hours times $7.25 = $409.63, plus $409.63 in liquidated damages, for total FLSA claim value of $819.25), the Parties will focus on the VWPA damages calculation for purposes of this settlement approval brief.

2

**II.  THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE.**

**A.  A Bona Fide Dispute Exists Between the Parties**

"All FLSA settlements must be approved either by the United States Department of Labor or the court." *Baust v. City of Va. Beach*, 574 F.Supp.3d 358, 363 (E.D. Va. 2021) (Smith, J.) (internal citation omitted).  "Such approval is required for both class actions and individual cases." *Id.*  The court must determine whether the proposed Settlement Agreement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Minsterman v. S.L. Nusbaum Realty Co.*, No. 2:10-cv-303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011) (Davis, J.) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982).  In the context of unpaid overtime claims brought under the FLSA, a "'bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment.  To settle such a dispute, there must be a resolution of the number of hours worked or the amount due.'" *Gholston v. Smithfield Foods, Inc.*, No. 2:22-cv-194, 2022 WL 21842305, at *3 (E.D. Va. Nov. 2, 2022) (Smith, J.) (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (Trenga, J.).)

Here, the Settlement Agreement resolves a *bona fide* dispute between the parties concerning Plaintiff's entitlement to any unpaid wages under the VWPA or FLSA.  In the Complaint, Plaintiff alleged that Defendant violated the FLSA and VWPA by not paying minimum wages to Plaintiff and similarly situated employees for workweeks when it collects from employees, via payroll deduction, bill, or other means, for purported training costs. (ECF 1, ¶¶ 2, 17-59; 76-81; 82-92.) With respect to Plaintiff's individual claim, she alleged that during her final two workweeks, she worked approximately 56.50 hours, at her $18.50 per hour, resulting in gross pay owed

3

to Plaintiff of $1,045.25 for those final two workweeks. (Id. ¶ 35.) After required tax deductions and withholding, Plaintiff's net pay for the final two workweeks came to exactly $879.72. (Id.) Pursuant to its policy at issue in this case, Plaintiff alleged that Defendant deducted from Plaintiff's pay for the final two workweeks exactly $879.72 (the full amount of Plaintiff's after tax wages) for purported training costs. (Id. ¶ 36). Thus, the maximum amount of unpaid wages at issue for Plaintiff was $1,045.25. Taking into account the VWPA's triple damages provision, Va. Code § 40.1-29(J) if she proved that Defendant "knowingly failed" to comply with the VWPA, her best possible recovery in the case was $3,135.75.

Defendant has at all times denied liability, and had the case proceeded would have asserted that (1) it had a contractual right (and a right under the VWPA) to make the deductions at issue, (2) Defendant complied with all applicable laws and certainly did not "knowingly fail[]" to comply with the VWPA or any law, and (3) even if Plaintiff succeeded on some aspects of her case, her recoverable damages were far lower than the $3,135.75 as calculated above.

In light of the Parties' opposing positions, multiple factual and legal disputes exist, including: (1) whether a collective employees who are similarly situated to Plaintiff exists, and whether the case is appropriate for collective action treatment; (2) whether Defendant had a contractual right to make the deductions at issue, (3) whether Defendant should be held liable for liquidated damages under the FLSA or triple damages under the VWPA; and (4) whether Defendant's alleged violation of the FLSA was willful. Therefore, a *bona fide* dispute exists between the parties. The existence of a *bona fide* dispute is further supported by the fact that, under the Settlement agreement, neither party admits liability. The Settlement Agreement resolves these contested issues.

### B. The Settlement Agreement Is Fair and Reasonable.

After determining the existence of a *bona fide* dispute, courts then look to whether the proposed settlement is a fair and reasonable compromise over the issues. In making a fairness determination, courts weigh a number of factors, including: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Gholston*, 2022 WL 21842305, at *2 (citing *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014) (Morgan, J.).) While these six factors are "more applicable to a collective action under FLSA than an action involving a single plaintiff," courts have applied them to guide the analysis for fairness in single-plaintiff settlements. *Rosa v. Gulfcoast Wireless, Inc.*, Civ. No. 18-4577, 2018 WL 6326445, at *2 (E.D. La. Dec. 3, 2018); *see also Stephens v. Take Paws Rescue*, No. 21-cv-1603, 2022 WL 2132286, at *2 (E.D. La. June 14, 2022).

When considering these factors, courts must also keep in mind that:

> [a] compromise is the essence of a settlement and the trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might have been gained since inherent in compromise is a yielding of absolutes and abandoning of highest hopes.

*Gholston*, 2022 WL 21842305, at *2 (quoting *Lomascolo*, 2009 WL 3094955, at *10). Moreover, "there is an overriding public interest in favor of settlement." *Id.* Therefore, "[t]here is a 'strong presumption in favor of finding a settlement fair.'" *Id.*

Here, all six factors support approval of the Settlement Agreement. Plaintiff's and Defendant's counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion.

5

Cases asserting wage-and-hour claims on an individual and collective basis are expensive and time-consuming for all parties involved, and consequently, the expense and likely duration of continued litigation (absent settlement) favor approval. The Parties exchanged relevant data and information, engaged in legal research, and analyzed data and evidence to assess potential damages before negotiating the settlement in good faith. The Parties were fully informed of the issues pertaining to Plaintiff's claims, Defendant's defenses, and the Parties recognize that the outcome of continued litigation would be uncertain and the risks of continued litigation would be high. In these circumstances, the Parties and their respective counsel support the settlement and request this Court's approval.

1. <u>The Discovery and Information Exchanged By the Parties Favors Approval of the Settlement</u>

Prior to filing suit, Plaintiff had the documents that would be central to the case, namely, her contract / offer letter describing the training costs and authority or purported authority to deduct the same from her final paycheck, and her pay records showing the deduction. After suit was filed, the Parties exchanged relevant information regarding their respective views of the case and damages calculations, the statutory terms at issue, the terms of the contract relating to the training costs deductions at issue, the size of the putative collective, and Defendant's defenses. This exchange of information enabled the Parties to carefully assess the legal and factual merits of Plaintiff's claims and Defendant's defenses. The Parties also undertook independent factual investigation of the asserted claims, defenses, and analyzed the pertinent legal issues. This factor supports approval of the settlement because counsel and the Parties adequately evaluated the merits of the claims, counterclaims, and defenses before engaging in settlement negotiations.

2. <u>The Stage of Proceedings, Including the Complexity, Expense, and Likely Duration of This Case, Absent Settlement, Favor Approval of the Settlement</u>

As noted above, the proceedings have resolved prior to formal discovery or Defendant filing an Answer, as Plaintiff had the relevant documentary evidence prior to filing suit, and the parties informally exchanged the damages calculation information necessary to resolve the matter. The Parties have engaged in legal discussions regarding potential liability and legal risks for both parties, including, on the one hand, the possibility that the Court could conditionally certify an FLSA collective and rule in favor of Plaintiff's claims, or on the other hand, that the Court could conclude that Defendant had a contractual and statutory right to make the payroll deductions at issue. The proceedings thus far have enabled "the Parties and their counsel to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at *11. Should this matter proceed to trial, a jury would have to resolve multiple questions concerning the application of the VWPA and/or FLSA to the facts of this case. Therefore, these circumstances weigh in favor of approving the settlement. *Gholston*, 2022 WL 21842305, at *4.

3. <u>The Absence of Fraud or Collusion in the Settlement Favors Approval</u>

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Davis v. BT Ams. Inc.*, No. 2:16-cv-206, 2017 WL 11506967, at *4 (quoting *Lomascolo*, 2009 WL 3094955, at *12). In this case, there is no evidence that fraud, collusion, or a conflict of interest tainted the bargaining process. The Parties negotiated at arms-length, extensive private settlement discussions, and neither Plaintiff nor Defendant objects to the Settlement Agreement. *See* Exhibit 1 (Settlement Agreement signed by Plaintiff and Defendant). Thus, this factor also favors the court approving the Settlement Agreement. *Gholston*, 2022 WL 21842305, at *4.

### 4. The Experience of Counsel Who Represented Plaintiff Favors Settlement Approval

Plaintiff has been represented in this action by experienced attorneys Coffield PLC and Sutter & Terpak, PLLC. When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019); *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1075) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."). Plaintiff's counsel are well-respected lawyers with a breadth of experience in the fields of employment litigation and wage and hour law. They have litigated a number of small and large overtime cases against public entities and private corporations, including, but not limited to:

- *Campbell, et al. v. Capital Center, LLC*, 3:20-cv-00694 (EDVA)
- *Goode v. Better Homes Coalition*, 3:20-cv-00116 (EDVA)
- *Payne v. Echohill Enterprises*, 5:19-cv-00059 (WDVA)
- *Riggs v. Barns at Woodbourne*, 3:19-cv-00064 (WDVA)
- *Campbell, et al. v. Intercontinental Capital Group, Inc.*, 3:22-cv-00034 (E.D. Va.)
- *Wheaton v. Westminister-Canterbury of The Blue Ridge*, 3:22-cv-00050 (W.D. Va.)
- *Mendoza, et al. v. Baird Drywall & Acoustic, Inc., et al.*, 7:19-cv-882 (W.D. Va.)
- *Denton v. Westminster Child Care Center*, 3:21-cv-00026-NKM-JCH (W.D. Va.)
- *Gutierrez v. Baird Drywall & Acoustic, Inc.,* 7:22-cv-00604-EKD (W.D. Va.)
- *Lambie v. Entegee, Inc., et al.*, 1:22-cv-00030-JPJ (W.D. Va.)
- *Kotsifas v. Woodlake Community Association, Inc.,* 3:20-cv-00179-DJN (E.D. Va.)
- *Matthews, et al. v. Commercial Condominium Mgmt. Co*., 1:22-cv-00297-AJT (E.D. Va.)
- *Bendolph v. DLH Holdings Corporation, et al.*, 1:22-cv-00401-TSE (E.D. Va.)
- *Petrea v. Midnight Express Auto Recovery, Inc.*, 3:22-cv-00415-JAG (E.D. Va.)

Plaintiff's counsel relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the settlement. Based on Plaintiff's counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour actions, Plaintiff's counsel's opinion is that the settlement is fair, reasonable, and

adequate and resolves a bona fide dispute. That opinion, based on extensive knowledge of employment law, is entitled to significant weight.

Given this record of Plaintiff's counsel's extensive credentials and experience, the "attorney experience" factor also weighs in favor of finding the settlement fair and reasonable. *Gholston*, 2022 WL 21842305, at *5.

### 5. The Probability of Plaintiff's Success On the Merits and the Uncertainty of Damages Favor Settlement Approval

The probability of Plaintiff's success on the merits likewise supports approval. The settlement reflects the fact that Defendant would have vigorously contested the merits of Plaintiff's individual claims, including its contention that it had a contractual and statutory right to make the deductions at issue. Defendant would also have vigorously opposed any rmotion by Plaintiff to certify an FLSA or VWPA collective. Additionally, Defendant contends that it did not "knowingly fail[]" to comply with the VWPA or any law, which would significantly limit the possible recovery in this case. Additionally, Defendant contends that the shorter two-year statute of limitations under the FLSA would have been appropriate because any alleged violation was not willful, which would also significantly limit the possible recovery in this case. Therefore, it is possible that after completion of discovery, Plaintiff would not have satisfied her burden of proving a violation of the FLSA or VWPA, or that her damages if successful would be significantly lower than her "best day in court" calculation above. Further, it is possible that Plaintiff would not have been unable to establish that she is similarly situated to any other employees and that her motion for conditional collective action certification would be denied. These risks are relevant in the assessment of a settlement's fairness and reasonableness.

Further, were Plaintiff to succeed in litigation, she would have sought liquidated damages under the FLSA in an amount equal to the alleged unpaid minimum compensation. Defendant

9

would contend that it acted in good faith and that liquidated damages were not appropriate. *See* 29 U.S.C. § 260 (providing the employer with a safe harbor to avoid liquidated damages where actions were undertaken "in good faith"). Similarly, Plaintiff would have sought triple damages under the VWPA based on the amount of withheld wages. Defendant would contend that it did not knowingly fail to comply with the VWPA and therefore triple damages were not available. *See* Va. Code § 40.1-29(J)&(K) (triple damages only if the employer "knowingly failed" to comply with VWPA). Given the disputed issues, a settlement that provides Plaintiff the certainty in an immediate recovery with respect to her alleged unpaid wages is a fair and reasonable compromise of Plaintiff's claims.

For these reasons, this factor also favors approval of the settlement.

      6. <u>The Settlement Amount Relative to the Available Range of Potential Recovery Favors Settlement Approval</u>

The range of possible recovery also favors approval. Based on Plaintiff's calculation of her alleged damages, Plaintiff believes this settlement amounts to more than double her best possible recovery in the case. As described above, Plaintiff contends maximum amount of unpaid wages at issue for Plaintiff was $1,045.25 (the gross amount of her hourly pay that Defendant withheld to recoup training costs). Therefore, taking into account the VWPA's triple damages provision, Va. Code § 40.1-29(J), if Plaintiff proved that Defendant "knowingly failed" to comply with the VWPA, her best possible recovery in the case was $3,135.75. By contrast, Defendant contends that Plaintiff is entitled to no wage or damages whatsoever. Ultimately, the Settlement Agreement pays Plaintiff $6,5000 (exclusive of attorneys' fees and costs), which reflects more than double Plaintiff's best day in court calculation. Further, the Settlement Agreement provides for the costs and expenses of the litigation to be reimbursed to Plaintiff's attorneys.

10

The direct payment Plaintiff will receive, as well as the payment of costs and expenses to her attorneys, favor settlement approval.

### III. ATTORNEYS' FEES AND COSTS.

The court must also review awards of attorneys' fees in an FLSA case. *See, e.g.*, *Carr v. Rest Inn, Inc.*, 2015 WL 5177600, at *3 (E.D. Va. Sept. 3, 2015). The FLSA's fee-shifting provision provides that the court "shall, in addition to any judgment awarded to the . . . plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As courts have explained, this provision illustrates that "[t]he FLSA 'contemplates that the wronged employee should receive his full wages plus the penalty without incurring any expenses for legal fees or costs.'" *Carr*, 2015 WL 5177600, at *3 (quoting *Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010).) Accordingly, "the FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.* (quoting *Poulin*, 2010 WL 1813497, at *1 (internal quotation marks omitted)).

The Fourth Circuit has outlined a three-step process for arriving at a reasonable attorney's fee: "(1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiff[]." *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, *22 (4th Cir. 2019). While "the parties' voluntary agreement is due some deference, courts in this Circuit generally examine the lodestar princip[les] as a guide or a cross check to assessing the fairness of the negotiated sum." *Davis v. BT Ams. Inc.*, No. 2:16-cv-206, 2017 WL 11506967, at *3 (E.D. Va. May 10, 2017) (Smith, J.) (citations and internal quotations omitted). "[T]he lodestar amount . . . is defined as a 'reasonable hourly rate

11

multiplied by hours reasonably expended.'" *Carr*, 2015 WL 5177600, at *3 (quoting *Grissom v. Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008).)

The following twelve factors, first stated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), guide a district court's discretion in determining what constitutes a "reasonable" number of hours and rate:

1) the time and labor expended;
2) the novelty and difficulty of the questions raised;
3) the skill required to properly perform the legal services rendered;
4) the attorney's opportunity costs in pressing the instant litigation;
5) the customary fee for like work;
6) the attorney's expectations at the outset of the litigation;
7) the time limitations imposed by the client or circumstances;
8) the amount in controversy and the results obtained;
9) the experience, reputation and ability of the attorney;
10) the undesirability of the case within the legal community in which the suit arose;
11) the nature and length of the professional relationship between attorney and client; and
12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (spaces added) (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). A court need not consider all twelve *Johnson* factors, only those relevant to the particular litigation. *See LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 595 (E.D. Va. 2016) (Jackson, J.).

Plaintiff's counsel has expended a significant amount of time and labor on this litigation and the preparation that preceded, estimated at approximately $9,459.06 ($5,029.06 from 9.58h (Coffield), plus $4,025 from 7h (Sutter), plus $405 in costs) as of January 12, 2024 (when the parties began settlement talks).[2] As of April 18, 2024, after settlement negotiation and settlement

---

[2] While Plaintiff seeks approval of a holistic settlement including the specified attorney fees, and the fees provided in the settlement represent a substantial discount compared to the lodestar, Plaintiff will provide billing records for the Court's review on request.

12

approval briefing, Plaintiff's counsel's lodestar was an estimated $12,177.83 ($7,345.33 from about 13.99h (Coffield) plus $4,427.50 from 7.7h (Sutter), plus $405 in costs).

This case raises difficult questions of interpreting the FLSA's minimum wage requirements in it of its "free and clear" regulation, contractual interpretation, and the "knowingly failed" standard under the VWPA. Litigating these issues requires adequate skill. Plaintiff's counsel often has to pass on other potential cases to pursue current cases, such as this one. Under the Vienna Metro Matrix, reasonable fees for counsel with Plaintiff's counsel's experience level can exceed $500 per hour. *See Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10-CV-00502, 2011 WL 13369780, at *6 (E.D. Va. Aug. 24, 2011) (2011 range of hourly rates in Northern Virginia, $465-640 for attorneys with 8-10 years of experience and $520-770 for attorneys with 11-19 years of experience). Given the amount of hours at issue, and the considerably discounted fee provided in the settlement, Plaintiff's counsel does not ask the Court to opine on their hourly rates. Plaintiff's counsel's experience is discussed above; their expectations at the outset were that the case would be a bona fide dispute, and it was. The case involved typical time commitments as it entailed preparing, research, and negotiating wage and hour claims. The amount in controversy and results obtained are discussed above. Plaintiff's counsel consider the "undesirability" of the case to be neutral: the case had merit, but involved complex wage and hour issues. Plaintiff's counsel has a good relationship with their client. Numerous FLSA cases award fees based on counsel's lodestar; here, the settlement provides for a fee well below the estimated lodestar.

The settlement agreed to by the Parties reflects the fee-shifting nature of the FLSA and VWPA, and rather than engaging in a time-consuming and costly fight over the amount of attorneys' fees, the Parties here were able to reach a resolution of the claim for attorneys' fees and costs, with Plaintiff's counsel agreeing to a reduction from their lodestar. The fee amount provided

by the settlement therefore also represents a discount below what could have been awarded on a fees motion had the case been litigated and resulted in an adjudicated judgment for Plaintiff.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)); *see also Davis*, 2017 WL 11506967, at *2-3. When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis.[3] *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *LeFleur*, 189 F. Supp. 3d at 593. However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis. *Devine v. City of Hampton*, No. 4:14-cv-81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id*. (citing *Poulin*, 2010 1813497, at *1).

"In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'" *Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D. N.C. 2002) (quoting *McKnight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001).) Here, even though Plaintiff believes the settlement to be a significant success, the Parties negotiated and agreed that Plaintiff's counsel's attorneys' fees and costs would be discounted to $6,500 ($6,095

---

[3] "The lodestar fee is calculated by multiplying the number of reasonable hours expended times a reasonable rate." *LeFleur*, 189 F. Supp. 3d at 593 (citing *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998).)

in fees plus $405 in costs), with no additional fee recovery going forward through the settlement process.

## CONCLUSION

For all of the above, reasons, the Parties jointly request that the Court approve the Settlement Agreement as fair and reasonable, and dismiss the Action With Prejudice in its entirety.

Respectfully submitted,

*Counsel for Plaintiff Kayla Azpeitia:*

/s/Timothy Coffield
Timothy Coffield (VSB No. 83430)
Coffield PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com

/s/Matthew Sutter
Matthew T. Sutter, Esq., VSB 66741
Sutter & Terpak, PLLC
7540 Little River Turnpike, Suite A
Annandale, VA 22003
Telephone: (703) 256-1800
Facsimile: (703) 991-6116
matt@sutterandterpak.com

Counsel for Defendant Employment Advocates Group LLC:

/s/Micah E. Ticatch
Micah E. Ticatch (VSB 83351)
IslerDare, P.C.
1945 Old Gallows Rd., Ste 650
Vienna, Va. 22182
mticatch@islerdare.com
(703) 663-1308

## CERTIFICATE

I HEREBY CERTIFY that on April 18, 2024 the foregoing was filed using the Court's ECF system which will send electronic notice of the same to all counsel of record.

<u>/s/Timothy Coffield</u>

Counsel for Plaintiff